*Richard Abraham & Jacqueline Abraham*, pro se.

JEAN SHULTZ & another[1] *vs.* JEAN SHULTZ & others.[2] June 24, 2008. *Trust,* Reformation, Marital deduction trust.

Jean Shultz, who is the surviving settlor of the Shultz Family Trust (trust), and Harvey A. Shultz, the trustee of the trust, commenced this action in the Probate and Family Court, seeking reformation of various provisions of the trust. A judge in the Probate and Family Court waived appointment of a guardian ad litem for unborn and unascertained beneficiaries, granted the proposed reformations as to certain provisions,[3] and reported the remainder of

[1]Harvey A. Shultz, trustee of the Shultz Family Trust.

[2]Harvey A. Shultz, Leonard D. Shultz, Arnon Vered, David B. Shultz, Sarah N. Shultz, Hanna Debra Vered, Lucas Albert Vered, and the Commissioner of Internal Revenue. For ease of reference, we will refer to the parties by their first names. The commissioner has not appeared or participated.

[3]A guardian ad litem was appointed to represent the interests of the two minor beneficiaries. The guardian ad litem submitted a report concluding that all the proposed reformations, the ones granted by the judge and the one before us, were in the minors'

the case to the Appeals Court. We granted the application for direct appellate review.

*Facts.* The parties have assented to the facts alleged in the complaint.[4]

Jean is the widow of Samson Shultz, who died on February 8, 1993. Harvey, Leonard, and Arnon are their three adult children.[5] David and Sarah are the adult children of Leonard. Hanna and Lucas are the minor children of Arnon. Jean and Samson retained attorney Judah Rubin to implement an estate plan that would achieve their estate planning goals, one of which was the minimization of Federal and State estate taxes.[6] Rubin drafted the trust instrument, which was signed by Jean and Samson on November 23, 1990. At the time they created the trust, Jean and Samson intended that the trust's provisions would minimize estate taxes on their deaths by using the available unified credit in both estates and marital deduction in the estate of the first to die.

After the trust was executed, Rubin assisted with the transfer of real estate and other assets to the trust for the purpose of achieving Jean and Samson's estate tax minimization and other estate planning goals. Jean transferred to the trust several parcels of developed real estate and investments that were titled solely in her name. In addition, Jean and Samson transferred to the trust their jointly owned real estate, now known as 33-35 Columbia Street, Brookline (Columbia Street property).

Section 7 of the trust controlled distributions from the trust while both Jean and Samson were living. Section 7 provides:

> "The accumulated net income shall be distributed to or for the use and benefit of the [*sic*] Samson Shultz and Jean Shultz for life in the reasonable discretion of the Trustee, not less frequently than quarterly. The Trustee may in his reasonable discretion invade of [*sic*] the principal of the Trust to be applied to or for the benefit of Samson Shultz or Jean Shultz for their support, comfort, and maintenance."

As noted above, Samson died in 1993. No Federal or State estate tax return was filed for Samson's estate.[7] Section 8 of the trust, titled "Distribution of Income," became applicable on Samson's death. Section 8 provides in full:

interests. The plaintiffs moved to dispense with appointment of a guardian ad litem for any unborn and unascertained beneficiaries. The judge allowed this motion. We ordinarily require that a guardian ad litem be appointed to represent the interests of minor, unborn, unascertained, and incompetent beneficiaries. *Fiduciary Trust Co.* v. *Gow*, 440 Mass. 1037, 1038 n.7 (2004), *S.C.*, 443 Mass. 1017 (2005). In the circumstances of this case, however, because it is clear that the proposed reformation before us cannot harm the interests of any beneficiary, the judge did not err in allowing the motion.

[4]The parties initially submitted statements assenting to the relief requested. They expressed their assent to the facts after being directed to do so by this court. We remind litigants and their attorneys of their obligation to provide this court with a full record to support their requests for reformation, and we caution them that we will not hesitate to reject proposed reformations where the record is inadequate.

[5]Arnon was named Melvin Shultz at birth but changed his name in the 1970's.

[6]Jean and Rubin have submitted affidavits attesting to Jean and Samson's intention to minimize taxes.

[7]At first, the parties did not explain why Samson's estate did not file any tax returns. After we issued an unpublished order directing the parties to do so, they submitted a

"The Trustee may continue to distribute in his sole discretion net income and principal from the Trust upon the death of Samson Shultz or Jean Shultz to and for the use and benefit of the survivor thereof for life in convenient installments, not less frequently than quarterly, during their lifetime."

As written, section 8 does not qualify for the marital deduction under either State or Federal law. In particular, to qualify for the Federal QTIP marital deduction, a specific portion of property must pass from the decedent to the surviving spouse; all the income from the property must be payable to the surviving spouse annually or more frequently; and no person can have the power to appoint any part of the property to any person other than the surviving spouse during the spouse's lifetime. I.R.C. § 2056 (2006). Further, the executor must make an election for the QTIP marital deduction to apply. Massachusetts law in 1990 and 1993 followed the same rules, except that in Massachusetts the total amount of the marital deduction, QTIP or otherwise, was limited to one-half of the value of the Massachusetts adjusted gross estate. As written, section 8 does not appear to comply with these requirements: for example, it gives the trustee discretion to pay income and principal to Jean rather than requiring that income be distributed to her. The proposed reformation would make it clear that the trustee "shall continue to distribute net income from the Trust upon the death of Samson Shultz or Jean Shultz to and for the use and benefit of the survivor thereof for life in convenient installments, not less frequently than quarterly, during the survivor's lifetime." It would also give the trustee discretion to distribute principal to the survivor.

The parties also request that section 8 be reformed so as to authorize the division of the trust "into separate shares with the amount of the shares to be determined in accordance with the assets contributed to the Trust be each Trustor." This would allow the marital deduction QTIP election to be made on the share attributed to Samson (particularly, his interest in the Columbia Street property) to the extent that the trust share exceeded the unified credit at the time of the first settlor's death.

*Discussion.* We may reform a trust to conform to the settlor's intent when the instrument as drafted fails to accomplish the settlor's intended tax objectives. *Walker* v. *Walker*, 433 Mass. 581, 587 (2001), and cases cited. We require clear and decisive proof that the instrument fails to embody the settlor's intent. *DiCarlo* v. *Mazzarella*, 430 Mass. 248, 250 (1999). That the settlors intended to minimize taxes is clear from Jean and Rubin's affidavits. It is apparent that section 8 of the trust, as written, frustrates this intent by failing to conform to the requirements for a marital deduction trust. As to the division of trust property into separate shares, based on the settlors' contributions to the trust, this is a ministerial change intended to simplify administration of the trust. The proposed reformation would "neither change[] the identity of any beneficiary nor alter[] any beneficial interest." *BankBoston* v. *Marlow*, 428 Mass. 283, 286 (1998). Moreover, the guardian ad litem representing the minor beneficiaries' interests has submitted a report in favor of the proposed reformation. In these circumstances, we agree that the proposed reformation is warranted.

---

memorandum and affidavit explaining that Samson's estate included only his interest in the Columbia Street property and other nominal assets, and as such, the value of his estate was below the threshold requiring Federal or Massachusetts estate tax returns.

*Conclusion.* A judgment shall enter in the Probate and Family Court reforming section 8 of the trust as requested in exhibit F of the complaint.

*So ordered.*

The case was submitted on brief.

*Robert H. Ryan, Alexander A. Bove, Jr., & Melissa Langa* for the plaintiffs.