# United States Court of Appeals
## For the First Circuit

No. 10-1976

PATRICIA J. COFFILL,

Plaintiff, Appellant,

v.

ROBERT G. COFFILL, JR., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William J. Young,  U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

James R. Knudsen, with whom Edward L. Manchur and Whittenberg
Knudsen, LLP were on brief, for appellants.
R. Bruce Allensworth, with whom Andrew C. Glass, Gregory N.
Blase, and K&L Gates LLP were on brief, for appellee.

August 31, 2011

_____
[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>**.  In this suit, removed from the Superior Court of Massachusetts, the plaintiff, Patricia Coffill, seeks to rescind two mortgages ostensibly encumbering titles to her residence in Andover, Massachusetts, and a retreat in Maine, and she asks for further equitable relief against foreclosure as well as for damages.  Defendants include (without limitation) her husband and his business partner; the original mortgagee, Bank of Ann Arbor, Inc.; its nominee of record, Mortgage Electronic Registration System, Inc. (MERS); the supposed current assignee of the mortgage interest, CitiMortgage, Inc.; and a lawyer claimed to have acted for both the husband and the mortgagee, Sherrill R. Gould.

This appeal is brought from the dismissal under Federal Rule of Civil Procedure 12(b)(6) of those counts upon which removal was predicated (the remainder being remanded to the state court), and we accordingly give the gist of the present issue on the basis of the pleadings.  Coffill's husband needed to raise money for a new business and asked her to sign documents he described as attesting to her clear title to the Andover and Maine properties and certifying a clean family credit record generally.  She was never given a chance to read the pair of two-page instruments, but was requested to sign and acknowledge them in some haste before a notary public on August 13, 2008.  In fact, the documents were powers of attorney purporting to authorize the husband to mortgage

-2-

the two properties, and each included the following provision governing the duration of the authority granted:

> This power of attorney and the powers herein granted shall terminate upon the earliest occurrence of [various events or] the expiration of a period of time ending May 31, 2008. It is my intention that any person or any firm, corporation, joint venture, association or other legal entity of any kind or character dealing with my said attorney, or his substitute or substitutes, shall be entitled to rely on the provisions of this paragraph in determining whether or not this power of attorney has been revoked . . . .

Despite the fact that each of the powers on its face had expired prior to its execution date, five days after their execution the husband tendered them at the loan closing where he executed mortgages of the two properties, on the strength of which the Bank of Ann Arbor gave him $695,000.

So far as it concerns us here, Coffill's prayer for rescission rests on provisions of the federal Truth In Lending Act, 15 U.S.C. § 1635, which has a state counterpart in the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D § 10.[1] Each requires a lender to provide a borrower with specific information about the terms of credit, as well as notice that a borrower assailed by second thoughts may call things off by rescinding the transaction within a limited time. See generally McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st

---

[1] Applicability of the federal act to the Maine real estate is contested.

Cir. 2007); In re Desrosiers, 212 B.R. 716, 722 (Bankr. D. Mass. 1997).  If no such notice is given to the borrower, however, the rescission period is generally three years after the transaction under the Truth in Lending Act, 15 U.S.C. § 1635(f), and four years under the Massachusetts law, Mass. Gen. Laws ch. 140D § 10(f).  Coffill alleges that she never received notice of terms and cancellation rights, which would have revealed her husband's fraud and led her to rescind the transactions, and so she claims a statutory right to rescind now.

CitiMortgage moved to dismiss the counts against it and its nominee MERS under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for which relief is available.  They rely on the admitted fact that the husband received timely statutory disclosures, which are said to have sufficed as notices to Coffill by virtue of the powers of attorney.  She, in turn, responds that the powers of attorney conveyed no authority to act on her behalf in August 2008, given their stated expirations on May 31.

At the District Court's hearing on the motion to dismiss, the sole issue was the efficacy of the two powers at the August loan closing.  No evidence was taken at the brief courtroom proceeding, and the court resolved the issue of authority at the closing by drawing "a natural inference" that "it's supposed to terminate May of 2009," that the May expiration date was "a

-4-

scrivener's error as a matter of law . . . . She signed the document. The document's effective." Following this finding, the court proceeded to rule on the motion to dismiss, which it granted as to the several counts mentioned.

There is no dispute that Patricia Coffill preserved her position that the effectiveness of the powers turned on her intent, that her signatures were induced by fraud, that the original mortgagee and its assignee are charged with knowledge owing to Gould's notice of the circumstances, and that she "was entitled to pursue" these claims in support of her challenge. It is equally true that CitiMortgage and MERS raise a number of other issues on which they claim the right to ultimate judgment against Coffill. Because, however, none of them was considered by the District Court, we confine our attention to the sole issue that was resolved and look to the controlling local law of Massachusetts to review the soundness of concluding without evidence that the powers were effective as judicially corrected for what the court saw as apparent scrivener's error. We believe that the ruling as a matter of law without evidentiary hearing and evidentiary basis was error.

Although the motion before the District Court was one to dismiss, the court in effect took an intermediate step before acting on that motion, for in concluding that the powers of attorney suffered from identical scrivener's error and should be read as if their expiration dates were May 31, 2009 (not 2008) the

-5-

court was relying on its equity power to reform a written instrument to "conform [it] to the parties' intent." <u>OneBeacon Am. Ins. Co.</u> v. <u>Travelers Indem. Co.</u>, 465 F.3d 38, 41 (1st Cir. 2006) (summarizing Massachusetts law). Its authority to make such a correction thus turns on finding a mutual mistake by both Patricia and Robert Coffill about the intended effective date of the powers of attorney,[2] that is, it depends on findings of fact.

The District Court apparently reasoned that evidence was unnecessary on the strength of the rule that proof of a maker's intent at odds with the document is ineffective to defeat a third party's good faith reliance on a power of attorney valid on its face. <u>See</u> <u>Malaguti</u> v. <u>Rosen</u>, 262 Mass. 555, 160 N.E. 532, 536 (1928); <u>Strunk</u> v. <u>Strunk</u>, No. 320966(LJL), 2007 WL 1559486, at *4 (Mass. Land Ct. May 31, 2007). We understand this to be the point of the court's mentioning that "[s]he signed the document." But the document in this case is of no effect on its face, being limited by an expiration date long past before its purported exercise (or even execution), and thus apparently worthless.

The correct approach is illustrated by another case involving a wife-to-husband power of attorney, cited by Patricia

---

[2]In Massachusetts, powers of attorney are subject to rules of interpretation and reformation like those that govern standard contracts. <u>See</u> <u>McQuade</u> v. <u>Springfield Safe Deposit & Trust Co.</u>, 333 Mass. 229, 129 N.E.2d 923, 925-26 (1955); <u>Malaguti</u> v. <u>Rosen</u>, 262 Mass. 555, 160 N.E. 532, 535-36 (1928); <u>Grabowski</u> v. <u>Bank of Boston</u>, 997 F. Supp. 111, 125 (D. Mass. 1997).

Coffill. In Malaguti v. Rosen, an otherwise plenary grant of authority to the husband nonetheless reserved a discretionary power on the part of the wife that was patently at odds with the overall tenor of the instrument. 160 N.E. at 535-36. The document was reformed to provide the husband with full discretion, not merely as an inference from the facial disharmony of terms, but on the basis of evidence showing that his wife meant to reserve no powers. As in Malaguti, the issue here is one of intent, intent is a matter of fact, Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 761 N.E.2d 946, 951 (2002), and like other contested matters of fact it is to be resolved on the basis of evidence, Lordi v. Lordi, 443 Mass. 1006, 820 N.E.2d 813, 814 (2005). Hence, the general rule of applicable Massachusetts law that the evidence necessary for reformation must be "full, clear, and decisive proof" of the mutual mistake alleged. See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 610 N.E.2d 912, 917 (1993). And although we will assume there are cases in which a mutual mistake is so patent on the face of the instrument, and the possibility for correction so manifestly exclusive, that reformation may be ordered without evidentiary hearing, this is not one of them.

Indeed, the proposal to reform the powers of attorney in this case raised not one, but potentially two distinct issues of fact that would have to be resolved in the mortgagees' favor before the trial court's conclusion could be sustained. The first arises

as a consequence of the threshold legal question implicated by any proposal to reform the powers, given the pleadings in the case: is it possible to reform the durational provision of a facially nugatory power of attorney if the party making it had no intent to confer any authority of any duration (let alone, if that person's signature was induced by fraud)?  If the pleadings here are true in fact, this question of law would have to be answered in the defendants' favor before any reformation may be decreed, but just as surely the question should not even be considered unless material allegations about the plaintiff's execution of the powers are shown to be true.  We need to say no more here, since we do not know whether the facts as found will actually present the question for decision.  But if that question drops away, or is posed but answered in the affirmative, then a second issue of fact will be ripe for resolution: did Coffill and her husband have a different date mutually in mind?

Before closing, a word must be said about Davidson v. Reznikow, No. 295820, 2005 WL 774047 (Mass. Land. Ct. Apr. 6, 2005), on which CitiMortgage and MERS placed heavy reliance at argument, but which we do not think supports a contrary resolution of this appeal.  Although the execution of the power of attorney there was dated after the date of the acknowledgment, the power was held to be effective when exercised at a time subsequent to both dates.  Id. at *1 & n.3, *4.  Because the fact of acknowledgment at

-8-

some point was not contested, and the document contained no indication that its authority had expired after the later of the acknowledgment and execution dates, see id., the case is better seen as one about the materiality of error than about requirements for reformation.

The order dismissing four counts and remanding to the state courts will be vacated, and the case remanded to the district court for further proceedings.  As mentioned, we mean to imply no opinion on the issues raised by way of defense but not previously considered, or on the significance of the fraud claims, either in resolving any request to reform the powers in question, or on the creditor's rights of the assignee.

**Vacated and remanded**. Costs are taxed against the appellees.